# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FIRST LIBERTY INSURANCE CORPORATION | : | CIVIL ACTION |
| v. | : | |
| ZURICH AMERICAN INSURANCE COMPANY | : | NO. 12-1127 |

## MEMORANDUM OPINION

**Savage, J.**                                                                                           February 20, 2013

This is an action brought by the insurer of a parking garage operator against the insurer of the parking garage owner seeking a declaration that both insurers shared the duty to indemnify and defend each other in a personal injury action arising out of a fall on a slippery painted surface in the garage. It calls for a determination whether the garage operator is a real estate manager within the definition of an insured. It also implicates the identical "other insurance" provision in each insurer's policy.

On September 30, 2009, William and Tina Bregman filed a personal injury action which alleged that, on November 1, 2008, William Bregman was walking up a ramp in the garage located in the Abbotts Square Condominium when he slipped on slick yellow paint, causing injury. The Bregmans named as defendants Park America, Inc., the parking garage operator; Stobba Associates ("Stobba"), the owner of the garage; United Coatings, Inc., The Sherwin-Williams Company, and Valspar, the manufacturers of the paint; and, Lee's Hardware, the seller of the paint. Against Park America and Stobba, they asserted causes of action for negligence.

Park America and Stobba each had a commercial general liability insurance policy,

which was in effect at the time of the Bregman incident. First Liberty Insurance Corporation insured Park America; Zurich American Insurance Company insured Stobba.

The Bregman litigation was settled for $85,386, with First Liberty paying $75,000 on behalf of Park America, and Zurich paying $10,386 on behalf of Stobba. Summary judgment had been granted in favor of United Coatings and Sherwin-Williams. The Bregmans discontinued the action as against Valspar and Lee's Hardware.

First Liberty filed this declaratory judgment action against Zurich seeking reimbursement for indemnity and defense costs paid on behalf of Park America. Zurich responded by filing a counterclaim for reimbursement for its indemnity and defense costs of Stobba. Zurich, as equitable subrogee of Stobba, also filed a third party complaint against Park America for breach of contract for failing to provide insurance coverage for Stobba.

The parties have filed cross motions for summary judgment. First Liberty argues that Zurich is required to reimburse First Liberty fifty-percent (50%) of the settlement and the defense costs paid on behalf of Park America because Zurich insured Park America as Stobba's real estate manager. First Liberty also contends that both insurance policies were co-primary and that Zurich breached its duty to defend and indemnify Park America in the Bregman action, leaving First Liberty to bear the entire cost.

Zurich counters that Park America was not a real estate manager. Additionally, Zurich argues that Stobba was an additional insured under the First Liberty policy because Park America had agreed to name Stobba as an additional insured in its insurance policy, which extends coverage to organizations "to whom you are obligated by a written agreement to procure additional insured coverage." Pl.'s Ex. D (LG32450907). Zurich also

2

contends that because the Bregmans alleged that the injury was due to Park America's negligence, First Liberty was required to defend Stobba pursuant to the Blanket Additional Insured endorsement.

**Legal Standard**

The interpretation of an insurance contract is a question of law.  *J.C. Penney Life Ins. Co. v. Pilosi,* 393 F.3d 356, 360 (3d Cir. 2004) (citing *Med. Protective Co. v. Watkins,* 198 F.3d 100, 103 (3d Cir. 1999)).  "Whether a particular loss is within the coverage of an insurance policy is such a question of law and may be decided on a motion for summary judgment in a declaratory judgment action."  *State Farm Mut. Auto. Ins. Co. v. Universal Underwriters Ins. Co.*, 657 A.2d 1252, 1255 (Pa. Super. Ct. 1995), *rev'd on other grounds*, 701 A.2d 1330 (Pa. 1997).

A court must give effect to the plain language of the insurance contract read in its entirety.  *Lexington Ins. Co. v. W. Pa. Hosp.,* 423 F.3d 318, 324 (3d Cir. 2005) (citing *Reliance Ins. Co. v. Moessner,* 121 F.3d 895, 901 (3d Cir. 1997)).  When the policy language is ambiguous, the provision must be construed in favor of the insured.  *Reliance*, 121 F.3d at 900-01 (citing *Standard Venetian Blind v. Am. Empire Ins. Co.*, 469 A.2d 563, 566 (Pa. 1983)).  Contract language is ambiguous if it is reasonably susceptible to more than one construction and meaning.  *Bowersox v. Progressive Cas. Ins. Co.*, 781 A.2d 1236, 1239 (Pa. Super. Ct. 2001) (citing *Hutchison v. Sunbeam Coal Corp.*, 519 A.2d 385, 390 (Pa. 1986)).  However, policy language may not be stretched beyond its plain meaning to create an ambiguity.  *Trizechahn Gateway LLC v. Titus,* 976 A.2d 474, 483 (Pa. 2009).

## Analysis

Stobba's policy issued by Zurich covers any real estate manager working for Stobba. Under "Section II - Who Is An Insured" of the policy, the definition of an insured includes: "Any person (other than your 'employee' or 'volunteer worker') or any organization while acting as your real estate manager." Pl.'s Ex. C (CG00011207).

First Liberty contends that Park America was acting as Stobba's real estate manager; and, as such, it was covered by the Zurich policy issued to Stobba. Zurich argues that Stobba was not a manager of real estate, but was only a parking garage operator.

Stobba owned the garage and Park America operated it. On August 6, 2006, Park America, whose business is operating parking facilities, entered into a "Garage Operating Agreement" ("Operating Agreement") with Stobba Associates, the owner of Abbotts Square Condominium, to operate the garage in the condominium.

Park America managed and operated the garage under the Operating Agreement with Stobba, which was in effect at the time of Bregman's fall. Under the terms of the Operating Agreement, Stobba granted Park America "an exclusive license to operate and manage the Garage." (Op. Agmt., ¶ 1).

In paragraphs four and five, the Operating Agreement delineates the nature and the scope of Park America's duties, obligations and authority.

> 4. Operator shall provide all labor, administration, supervision, supplies, equipment and other items reasonably required for the proper and economic operation and security of the Garage. Operator shall employ, for the operation of the Garage, a sufficient number of suitable employees for the proper and economic management, operation and maintenance of the Garage for the parking of vehicles. . . .

4

> 5. The Operator shall have full and complete authority to manage the Garage subject to such policies and procedures as may from time to time be promulgated by the Owner in its reasonable business discretion. The operator agrees to manage and operate the Garage as a parking facility and agrees to perform its functions hereunder in a manner consistent with comparable parking facilities in Philadelphia, Pennsylvania. Without limiting the generality of the foregoing, Operator shall, during the term of this Agreement:
>
>> a) Manage, operate, direct, maintain, and promote use of the Garage . . . .

*Id.* at ¶ 4-5.

The Operating Agreement established a formula for dividing the revenue from the garage operation between Stobba and Park America. Stobba received the net revenues of the garage operation up to $720,000. Park America received the next $15,000 of annual net revenue. They split the next $70,000 of the annual net revenue, 20% to Park America and 80% to Stobba. Net revenue over $805,000 was divided 15% to Park America and 20% to Stobba. Stobba paid the cost of utilities, real estate taxes, use and occupancy taxes, and capital improvements. *Id.* at ¶ 17.

Contrary to First Liberty's contention, Park America is not a real estate manager. Park America is a parking garage operator. It did not manage the real estate. It managed the parking garage business pursuant to a license. It ran a parking garage, not a real estate operation.

The Operating Agreement clearly defines the relationship between Park America and Stobba. It states that nothing in the agreement should be construed "as constituting a partnership or joint venture between [Stobba and Park America], nor shall their

relationship hereunder be deemed to be that of principal and agent, or landlord and tenant." *Id*. at ¶ 9. In short, they were independent entities acting on and for their own benefit.

We conclude that Park America is not a real estate manager. Therefore, it was not an insured under the Zurich policy as Stobba's real estate manager.

Zurich argues that Stobba was an additional insured under First Liberty's policy and the coverage under that policy was primary. It relies upon the First Liberty policy endorsement that included "as an insured . . . any person or organization to whom you are obligated by a written agreement to procure additional insured coverage." It cites the Operating Agreement which required Park America to name Stobba as an additional insured on its liability policy.

Stobba was covered under Park America's policy issued by First Liberty. However, as a result of the identical "other insurance" provisions in the First Liberty and the Zurich policies, the insurers shared equally in the loss.

The First Liberty policy language does not require that the insured specifically name Stobba as an additional insured for coverage to apply. The inclusion is self-executing as long as there was a written agreement, in effect at the time, that required insuring an additional party. In other words, the policy did not require Stobba to be specifically named. Thus, Stobba, by virtue of its written agreement with Park America and the endorsement naming it an additional insured as a lessor of leased equipment was an additional insured under Park America's policy.

The Operating Agreement required that Park America maintain general liability insurance. The insurance provision reads that Park America shall:

> [A]t all times during the term of this Agreement, keep in full force and effect, in good and responsible insurance companies, which insurance companies are to be approved by [Stobba] in its reasonable discretion, policies of insurance in the following types and amounts: (a) General Liability Insurance, including the umbrella, with minimum limits of $10,000,000 for personal injury (including death), and $50,000 for property damage, naming [Stobba] as a party insured.

*Id*. at ¶ 6.

Notably, the Operating Agreement contains an indemnity clause requiring Park America to indemnify Stobba against third party claims arising out of the operation and maintenance of the garage. It provides that Park America shall:

> [I]ndemnify and hold [Stobba]...harmless from and against any and all losses, liabilities, costs and expenses (including, without limitation, reimbursement of actual attorney's fees, expert witness fees and court cost), arising out of claims by third parties and sustained or incurred by or asserted against [Stobba] by reasons of or arising out of [Park America's] management, operation, direction, or maintenance of the Garage.

*Id*. at ¶ 7.

The First Liberty policy contains an additional insured endorsement which extends coverage to one whom the named insured, Park America, agreed to provide coverage. It states:

> COMMERCIAL GENERAL LIABILITY COVERAGE PART
>
> A. Section II - Who Is An Insured is amended to include as an additional insured any person or organization to whom you are obligated by a written agreement to procure additional insured coverage, but only with respect to liability for 'bodily injury', 'property damage' or 'personal and advertising

injury' caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf . . . .

. . . .

D. OTHER INSURANCE

The insurance provided by this endorsement applies only to coverage and limits of insurance required by written agreement, but in no event exceeds either the scope of coverage or the limits of insurance available within this policy.

This insurance shall be excess over any other insurance available to the additional insured, whether such insurance is on an excess, contingent or primary basis, unless the written agreement with you requires that the insurance provided for the additional insured be primary, concurrent or primary non-contributory, in comparison to the additional insured's own policy or policies.

Pl.'s Ex. D (LG32450907).

Nevertheless, there is a significant limitation affecting the coverage afforded the additional insured. That provision limits coverage to "liability incurred as a result of some negligent act or omission of [Park America] . . . in the conduct of [Park America's] ongoing operations." Pl.'s Ex. D (LG10170501). The Bregman complaint contained separate counts against Stobba and Park America, alleging separate and distinct negligent acts and omissions against each. Hence, as alleged in the underlying action, the liability triggering coverage did not solely arise out of Park America's acts and omissions.

The indemnification obligation in the Operating Agreement excludes claims arising out of certain conditions, including slippery conditions on concrete surfaces. The limiting language reads: "However, Owner is responsible for any concrete maintenance faults and

claims due to this condition. As well as, a build up of water and related slippery conditions on the garage concrete surface." (Op. Agmt., ¶ 7).

Both the First Liberty policy and the Zurich policy contain identical "other insurance" provisions. This provision states:

4. Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

a. Primary Insurance

This insurance is primary except when Paragraph b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph c. below.

b. Excess insurance

(1) This insurance is excess over:

. . . .

(b) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

(2) When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

. . . .

> c. Method of Sharing
>
> If all of the other insurance permits contribution by equal shares, we will follow this method also. . . .
>
> If any of the other insurance does not permit contribution by equal shares, we will contribute by limits.

Pl.'s Exs. C (CG00011207) and D (CG00011207).

Both policies contain other insurance clauses that limit coverage to excess if there is other insurance coverage available. In effect, each operates to make the policy's coverage excess over the other. If both were given effect, they would cancel each other, resulting in no coverage. Therefore, they are irreconcilable and mutually repugnant. *Progressive N. Ins. Co. v. Universal Underwriters Ins. Co.*, 898 A. 2d 1116, 1120 (Pa. Super. Ct. 2006).

Where the clauses are repugnant, they are disregarded and the insurers share in the loss. *Id.* In that case, the insurers share the loss equally. *Am. Cas. Co. of Reading, Pa. v. PHICO Ins. Co.*, 702 A. 2d 1050, 1053 (Pa. 1997).

## Conclusion

Park America was not covered under Stobba's Zurich policy as a real estate manager. Stobba was an additional insured under the First Liberty policy. However, the two policies contained identical "other insurance" provisions that are irreconcilable. Therefore, First Liberty and Zurich must share equally in the indemnity and defense of the Bregman claim.